IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:20-CV-210-BO

| | |
|---|---|
| DR. YIZHEN "JENNY" SU, D.O., )<br>Plaintiff, )<br>v. )<br>)<br>DR. PATRICIA L. MATTO, D.O.; DR. )<br>ANDREW M. FREEMAN, D.O.; and )<br>SOUTHEASTERN REGIONAL MEDICAL)<br>CENTER, )<br>Defendants. ) | O R D E R |

This cause comes before the Court on defendants' partial motion to dismiss. Plaintiff has responded, defendants have replied, and a hearing on the matter was held before the undersigned on April 22, 2021, at Elizabeth City, North Carolina. In this posture, the motion is ripe for ruling and, for the reasons that follow, the motion is granted.

BACKGROUND

The following is a brief summary of the allegations in plaintiff's complaint. Plaintiff is a Doctor of Osteopathic Medicine who was hired as a Resident Physician in June 2017 through defendant Southeastern Regional Medical Center's Residency Program. In October 2017, plaintiff underwent a minor medical procedure which resulted in excessive bleeding. In November 2017, plaintiff began experiencing syncopal episodes, or loss of consciousness, which resulted in a number of emergency department visits and evaluations by physicians. Between November 2017 and January 2018 plaintiff alleges she experience syncopal episodes almost daily.

In December 2017, plaintiff's Resident Program supervisors began noticing changes in her behavior which they believed to be caused by illicit drug use. Plaintiff was suspended from the

Residency Program and ordered to undergo blood testing. Plaintiff's suspension was lifted after testing demonstrated that she was not using illicit drugs.

While plaintiff's condition was still undiagnosed and she continued to experience symptoms, including severe nausea, dizziness, and fainting, plaintiff continued to work to meet the standards of the Residency Program. During this time, plaintiff's supervising Program Director was Dr. Donald Morando. Dr. Morando assisted plaintiff in finding specialists to treat her condition and further allowed accommodations so that plaintiff could continue in the Residency Program.

Defendant Dr. Patricia Matto, who was the Vice President of Medical Education, objected to plaintiff being allowed any accommodation. In June 2018, plaintiff requested leave under the Family Medical Leave Act (FMLA) due to her condition. Plaintiff's leave was approved for a period of ten weeks with no defined return date. Plaintiff alleges that while she was on leave, defendant Dr. Freeman, an Attending Physician, attempted to solicit complaints about plaintiff from her fellow Residents. Plaintiff alleges that Dr. Freeman took this action in retaliation for plaintiff's being permitted to take FMLA leave.

While plaintiff was on leave she was able to determine that she had Postural Orthostatic Tachycardia Syndrome (POTS). Prior to the expiration of her FMLA leave, plaintiff alleges she was advised by Dr. Morando that she needed to return to work as soon as possible as Dr. Matto had indicated plaintiff would be terminated from the Residency Program if she did not return immediately. Plaintiff returned to work less than eight weeks after her FMLA leave had begun. Plaintiff was given accommodations by Dr. Morando which were ultimately revoked by Southeastern Regional Medical Center's Human Resources department. Plaintiff continued to face

pushback from Attending Physicians and denials of requests for leave while she attempted to manage her condition. Plaintiff passed all of her rotations through the spring of 2019.

Plaintiff alleges that defendant Dr. Freeman eventually became director of her Residency Program and made false accusations that plaintiff had engaged in both major and minor misconduct. During a meeting held on December 10, 2019, Dr. Freeman provided plaintiff with a list of grievances and accusations and informed her that disciplinary actions were forthcoming. Plaintiff alleges that her attempts to answer the allegations were rebuffed. On December 17, 2019, plaintiff was informed in a meeting with Dr. Freeman and Human Resources that she was being suspended for four days for neglecting to change her schedule which they considered to be insubordination. On December 18, 2019, plaintiff requested bereavement leave following the death of her grandfather. On December 19, 2019, Dr. Matto informed plaintiff that she had been suspended indefinitely. On January 14, 2020, plaintiff met with Dr. Matto to discuss her reinstatement following her suspension and was informed that her employment was terminated.

Plaintiff alleges seven causes of action: FMLA interference, wrongful termination in violation of the Americans with Disabilities Act (ADA), retaliation in violation of the ADA, failure to accommodate in violation of the ADA, intentional infliction of emotional distress under North Carolina law, negligent infliction of emotional distress under North Carolina law, and wrongful termination in violation of North Carolina public policy premised on the ADA, FMLA, the North Carolina Equal Employment Protection Act, and the North Carolina Persons with Disabilities Protection Act.

Defendants seek to dismiss plaintiff's intentional infliction of emotional distress, negligent infliction of emotional distress, and portions of plaintiff's public policy claim as to all defendants. Defendants further seek to dismiss plaintiff's ADA claims and portions of her public policy claim

3

against the individual defendants. In response to defendants' motion, plaintiff agrees that her public policy claim as to the individual defendants should be dismissed and voluntarily dismisses that claim.

## DISCUSSION

Defendants have filed their motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To this end, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987)). The movant's motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. *Id.*

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the facts alleged must allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court "need not accept the plaintiff's legal conclusions drawn from

4

the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal alteration and citation omitted).

I. North Carolina public policy claim

Plaintiff claims that her termination was in violation of North Carolina's public policy, specifically as articulated in North Carolina's Equal Employment Protection Act (NCEEPA), N.C. Gen. Stat. § 143-422.2, North Carolina's Persons with Disabilities Protection Act (NCPDPA), N.C. Gen. Stat. §§ 168A-1, *et seq.*, and regulations upholding and applying the ADA and the FMLA.

First, this Court lacks jurisdiction over plaintiff's public policy claim which relies on the NCPDPA. The NCPDPA provides that

> No court shall have jurisdiction over an action filed under this Chapter where the plaintiff has commenced federal judicial or administrative proceedings under Section 503 or Section 504 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. §§ 793 and 794, as amended, or federal regulations promulgated under those sections; or under the Americans with Disabilities Act of 1990 . . ..

N.C. Gen. Stat. § 168A-11(c). As plaintiff has alleged claims under the ADA, she may not also prosecute a claim for wrongful discharge in violation of North Carolina's public policy as expressed in the NCPDPA. *See Jefferson v. Biogen Idec Inc.*, No. 5:11-CV-237-F, 2012 WL 3629219, at *6 (E.D.N.C. Aug. 22, 2012); *see also McKinney v. Cleveland Cty. Bd. of Educ.*, No. 3:20-CV-221-MOC-DSC, 2020 WL 6803846, at *7 (W.D.N.C. Nov. 19, 2020).

The public policy exception to the North Carolina's "employment-at-will doctrine is a 'narrow exception.'" *Roberts v. First-Citizens Bank & Trust Co.*, 478 S.E. 2d 809, 814 (N.C. Ct. App. 1997) (citation omitted). It is only applicable where "the public policy of North Carolina is clearly expressed within [the] general statutes or state constitution, or (2) potential harm to the public is created by defendant's unlawful actions." *McDonnell v. Guilford County Tradewind*

5

*Airlines, Inc.*, 670 S.E.2d 302, 306 (N.C. Ct. App. 2009). To date, FMLA violations have not been held to be within the scope of the public policy exception. *See, e.g, Schuler v. Branch Banking & Trust Co.*, No. 1:08-CV-378, 2009 WL 3261665, at *5 (W.D.N.C. Oct. 8, 2009) (declining "to extend the North Carolina public policy exception to the at-will employment rule to include claims based on alleged violations of the FMLA" absent "guidance from the North Carolina courts or legislature."). The Court declines hold that FMLA violations are within the scope of the public policy exception here.

Finally, plaintiff agrees that her public policy claim cannot lie against the individual defendants. *See also Chung v. BNR, Inc./N. Telecom, Inc.*, 16 F. Supp. 2d 632, 634 (E.D.N.C. 1997) (NCEEPA violation may be asserted only against employer); *Lewis v. Baltimore City Bd. of Sch. Commissioners*, 187 F. Supp. 3d 588, 594 (D. Md. 2016) ("Individuals cannot be held liable under Title VII or the ADA."). The remaining aspect of this claim for wrongful discharge in violation of public policy stemming from NCEEPA and the ADA and will proceed only as to defendant Southeastern Regional Medical Center.

II. Emotional distress claims

In order to prove a claim for intentional infliction of emotional distress under North Carolina law, a plaintiff must be able to demonstrate that a defendant engaged in "extreme and outrageous conduct which caused severe emotional distress." *Blakeley v. Town of Taylortown*, 233 N.C. App. 441, 448 (2014) (internal quotation and citation omitted). "Defendants' conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency.'" *Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 32 (2012) (citation omitted). A claim for negligent infliction of emotional distress requires a plaintiff to show "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff

severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304 (1990). Severe emotional distress under both theories of relief is defined as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.*; *see also Waddle v. Sparks*, 331 N.C. 73, 83 (1992) (adopting same standard for intentional infliction claims).

Plaintiff fails to sufficiently allege that defendants intentionally inflicted emotional distress. Plaintiff's allegations do not support that she endured extreme and outrageous conduct by defendants, such as being "subject to a virtually unending barrage of abuse, harassment, threats, scorn, and derision heaped upon her by these Defendants—acts that at times spilled over into physical confrontation and attack . . . ." *Radcliffe v. Avenel Homeowners Ass'n, Inc.*, 248 N.C. App. 541, 561 (2016). "Furthermore, in the employment context, [intentional infliction of emotional distress] is an 'extremely rigorous standard.'" *Moody-Williams v. LipoScience*, 953 F. Supp. 2d 677, 682 (E.D.N.C. 2013) (citing *Thomas v. Northern Telecom*, 157 F.Supp.2d 627, 635 (W.D.N.C.2000)). Contrary to plaintiff's argument, having to choose between one's health and one's employment has not been determined to rise to the level of extreme and outrageous conduct. *See Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 494 (1986).

Plaintiff has also failed to make more than conclusory allegations that defendants' conduct was negligent in support of her negligent infliction of emotional distress claim. *See* Compl. ¶¶ 142, 143. Absent allegations of specific facts which would show that defendants engaged in negligent, rather than intentional behavior, plaintiff has failed to state a claim for negligent infliction of

7

emotional distress. *Baucom v. Cabarrus Eye Ctr., P.A.*, No. 1:06CV00209, 2007 WL 1074663, at *5 (M.D.N.C. Apr. 4, 2007).

III. ADA claims against the individual defendants

The ADA does not provide for a cause of action against individual defendants. *See Baird v. Rose*, 192 F.3d 462, 471-72 (4th Cir. 1999); *Z.G. by & through C.G. v. Pamlico Cty. Pub. Sch. Bd. of Educ.*, 744 F. App'x 769, 781 n.20 (4th Cir. 2018); *Lewis*, 187 F. Supp. 3d at 594; *Rocha v. Gilbert*, No. 7:12-CV-2-D, 2012 WL 13189900, at *1 (E.D.N.C. June 20, 2012); *Monroe v. BellSouth Telecommunications, Inc.*, No. CIV. 102CV00591, 2003 WL 22037720, at *3 (M.D.N.C. Aug. 15, 2003). Plaintiff's arguments to the contrary are unavailing and her ADA claims against the individual defendants are dismissed. *See Smith v. City of Marion*, No. 4:11-CV-2039-TLW-TER, 2012 WL 694314, at *3 (D.S.C. Jan. 27, 2012), *report and recommendation adopted*, No. CIV.A. 4:11-2039-TLW, 2012 WL 694275 (D.S.C. Mar. 2, 2012).

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' partial motion to dismiss [DE 11] is GRANTED. Plaintiff's claims for wrongful termination in violation of public policy under the NCEEPA and the ADA as well as her ADA claims against the individual defendants are DISMISSED. Plaintiff's claims for wrongful termination in violation of public policy under the NCPDPA and FMLA, intentional infliction of emotional distress, and negligent infliction of emotional distress alleged against all defendants are DISMISSED. Plaintiff's remaining claims will proceed.

SO ORDERED, this __7__ day of June, 2021.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE